IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Criminal Action No. |
| ) | 11-00257-01-CR-W-DGK |
| ) | |
| BERNARD MANUEL, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION TO
DENY DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

Before the court is Defendant's Motion to Suppress. Defendant moves the Court to suppress all evidence obtained as a result of an investigatory stop and subsequent search conducted on September 8, 2011. For the following reasons, Defendant's motion to suppress should be denied.

### *I. BACKGROUND*

On September 8, 2011, Kansas City, Missouri Police Officers Timothy Davis and Jason Cramblit observed Defendant walking through the T.B. Watkins housing complex knocking on doors and being denied access. A short time later, they observed Defendant sitting on the stairs in front of an apartment located a distance away from the apartments where he had knocked on the doors. Officer Davis approached Defendant and asked Defendant if he lived in the complex. Defendant responded that he did not, walked away from Officer Davis, and paced the balcony in front of the apartment with his hands in his pockets. Officer Davis ordered Defendant to take his hand(s) out of the pocket(s) of his jacket four separate times before Defendant ultimately complied. Defendant then removed his jacket, laid down on his stomach, was taken into custody by Officer Cramblit and

1

arrested for trespassing. Officer Davis checked Defendant's jacket and recovered a firearm and ammunition in the pocket.

An indictment was returned against Defendant on October 18, 2011. On December 20, 2011, Defendant filed a motion to suppress evidence (Doc. No. 14). The government responded to Defendant's motion on January 10, 2012 (Doc. No. 18). I conducted an evidentiary hearing on February 27, 2012. The government appeared by Assistant United States Attorney Paul Becker. Defendant was present, represented by appointed counsel Travis Poindexter. The government called Kansas City, Missouri Police Officers Timothy Davis and Jason Cramblit to testify. The following exhibits were marked and admitted into evidence:

| | |
|---|---|
| Government's Exhibit 1: | Trespass List |
| Government's Exhibit 2: | Photograph - #4/11-12 staircase |
| Government's Exhibit 3: | Photograph - Door #4 |
| Government's Exhibit 4: | Photograph - Opposite staircase |
| Government's Exhibit 5: | Photograph - Walkway |
| Government's Exhibit 6: | Photograph - #11/12 |
| Government's Exhibit 7: | Photograph - View across street, 1323 Highland Ave. |
| Government's Exhibit 8: | Photograph - Stairway #10/11 |
| Government's Exhibit 9: | Photograph - 1329 Highland Ave. sign |
| Government's Exhibit 10: | Photograph - Stairway #10/11 |
| Government's Exhibit 11: | Photograph - Walkway between #8/9 & 10/11 |
| Government's Exhibit 12: | Photograph - Stairway #9 |
| Government's Exhibit 13: | Photograph - View towards 1323 Highland Ave. |
| Government's Exhibit 14: | Photograph - Close-up view towards 1323 Highland Ave. |
| Government's Exhibit 15: | Photograph - Middle of walkway |
| Defendant's Exhibit 1: | Photograph - Aerial view of T.B. Watkins housing complex |

## II. EVIDENCE

On the basis of the evidence presented at the suppression hearing, I submit the following findings of fact.

1.  On September 8, 2008, Kansas City, Missouri Police Officers Timothy Davis and Jason

Cramblit were patrolling the properties within the Housing Authority, including the T.B. Watkins housing complex (Tr. at 3-4). An ariel view of the T.B. Watkins housing complex is depicted in Defendant's Exhibit 1 (Tr. at 9; Def. Exh. 1).

2. The T.B. Watkins housing complex is open to the public (Tr. at 31). Individuals can walk throughout the courtyards without a security code or pass (Tr. at 31). The T.B. Watkins housing complex does, however, have a trespass list that identifies and prevents individuals from coming onto the property who cause disorder or are involved in illegal activity (Tr. at 4; Gvt. Exh. 1).

3. At approximately 1:10 p.m. on September 8, 2008, Officers Davis and Cramblit responded to a call for service at 1325 Vine - Apartment #4, a residence within the T.B. Watkins housing complex, concerning a disturbance between the resident and a guest at his apartment (Tr. at 5, 18, 21, 22, 65). This residence is depicted in Government's Exhibit 2 (Tr. at 5, 65).

3. Officers Davis and Cramblit made contact with the resident outside the door to his apartment (Tr. at 5, 66). While Officer Cramblit was talking to the resident, Officer Davis observed Defendant walking through the complex (Tr. at 5-6). Defendant was in no way associated with the initial disturbance to which the officers had responded (Tr. at 22).

4. Upon seeing the officers, Defendant started moving away (Tr. at 6). He knocked on a door at an upstairs unit across the way, 1317 Vine - Apartment #12, but the resident shut the door in Defendant's face (Tr. at 6, 7-8, 67). The officers were not able to hear what, if anything, was said (Tr. at 23-24, 81). The door on which Defendant knocked is depicted in Government's Exhibit 4 (Tr. at 7).

5. Defendant went down the stairs, walked to another building and knocked on the door with

3

no response (Tr. at 6, 8, 81). He then continued to walk eastbound in a very slow, leisurely pattern through the complex; he did not act as though he were fleeing (Tr. at 6, 22, 26, 67). At no point did Defendant ever approach or make any comments to the officers (Tr. at 22).

6. The officers lost sight of Defendant (Tr. at 8, 68).

7. Officers Cramblit and Davis completed the service call and got into their patrol car to leave the area (Tr. at 8-9). As they drove south down Vine Street, they could see Defendant sitting on a set of stairs on an eastern apartment, a location that was not near either of the two apartments where Defendant knocked on the door (Tr. at 9, 10-11, 69, 70). The officers questioned why Defendant would be sitting so far away (Tr. at 70). The stairwell where Defendant was sitting is depicted above the maintenance shed in Government's Exhibit 14 (Tr. at 11, 69-70).

8. Officer Cramblit let Officer Davis out of the patrol car at the corner of 14th and Highland (Tr. at 11-12, 28, 70, 82). The location where Defendant was sitting is depicted in Government's Exhibit 8 (Tr. at 12). Officer Davis walked into the courtyard, approached Defendant at 1329 Highland, and asked him if he lived in the complex (Tr. at 12, 28-29). Officer Davis did not observe any weapons or contraband (Tr. at 32).

9. Defendant did not take off and run (Tr. at 29). Instead, he stood up, put his right hand in his pocket, and told Officer Davis that he did not live in the complex (Tr. at 12, 33). Defendant then turned around, and walked up the stairs away from Officer Davis (Tr. at 12, 33, 37). Officer Davis ordered Defendant to come down, but Defendant continued to walk along the elevated balcony (Tr. at 12, 33-34). Officer Davis did not observe any objects protruding from Defendant's pockets or see any bulges in his coat or pants (Tr. at 40).

4

10. Officer Davis called Officer Cramblit and told him to come to the scene, in case Defendant tried to flee (Tr. at 13, 34, 40).

11. Officer Davis again ordered Defendant to come down the stairs (Tr. at 13, 36). Defendant did not respond (Tr. at 13, 34-35). Instead, Defendant paced the balcony with both hands in his jacket pockets (Tr. at 13, 36, 37). Officer Davis ordered Defendant to take his hands out of his coat pockets (Tr. at 13, 38). Defendant removed his left hand, but kept his right hand in the pocket (Tr. at 13, 38). This caused Officer Davis to become suspicious (Tr. at 13). Officer Davis ordered Defendant in a stern voice, again, to remove his hand from the pocket of his coat; Defendant refused (Tr. at 13). Officer Davis then drew his weapon and ordered Defendant to remove his hand from the pocket immediately (Tr. at 13, 41).

12. Officer Cramblit arrived at the scene and also drew his gun (Tr. at 13, 71-72, 84).

13. Officer Davis ordered Defendant for the fourth time to remove his hands; Defendant complied, took off his jacket and set it down on the balcony behind him (Tr. at 13, 42, 43). As he did so, Officer Davis heard a "clunk" on the wood deck as if something heavy were in the jacket (Tr. at 14, 43). Neither officer observed a weapon or dangerous instrument either in Defendant's hands or protruding from his jacket (Tr. at 42, 84).

14. Defendant complied with orders and laid down on his stomach approximately five feet away (Tr. at 13-14, 43, 73). Defendant was no longer within reaching distance of the jacket (Tr. at 43). The location where Defendant laid down is depicted in Government's Exhibit 11 (Tr. at 72).

15. Officer Cramblit went up the east set of stairs and began to handcuff Defendant behind the back (Tr. at 14, 73, 84). Officer Davis went up the west side, as he believed there was a gun

5

in Defendant's jacket (Tr. at 14). Defendant was taken into custody for officer safety and due to his actions/failure to cooperate (Tr. at 45). Officer Cramblit consulted the trespass list and learned Defendant was on it (Tr. at 15, 74, 85). Defendant was then placed under arrest for trespassing (Tr. at 49).

16. Officer Davis felt the jacket pocket from the outside while it was still on the ground; because it was heavy, he picked up the jacket, looked inside the pocket and saw a pistol (Tr. at 14, 53-54, 63). Officer Davis testified he did not want anyone passing by to get or take and hide the gun (Tr. at 14).

17. Officer Cramblit escorted Defendant down the stairs to the patrol car (Tr. at 48).

18. Officer Cramblit testified that after an individual is arrested for trespassing, he or she is taken to jail and processed (Tr. at 78).

19. Officer Davis checked Defendant's jacket and recovered the pistol and one round of ammunition (Tr. at 45, 49, 50, 75). Officers neither photographed nor recovered Defendant's jacket for evidentiary purposes (Tr. at 39, 50). The jacket was, however, taken from the scene with Defendant's property (Tr. at 55). It is standard procedure for the Kansas City, Missouri Police Department to inventory prisoners' property (Tr. at 50).

### III. LEGAL ANALYSIS

Defendant contends that there was not reasonable suspicion to justify an investigatory stop, and that the search of his jacket without a warrant exceeded the boundaries of the Fourth Amendment. Each contention will be addressed in turn.

Under Terry v. Ohio, "[l]aw enforcement officers may make an investigatory stop if they have a reasonable and articulable suspicion of criminal activity." United States v. Bustos-Torres,

6

396 F.3d 935, 942 (8th Cir. 2005). "A reasonable suspicion is a 'particularized and objective' basis for suspecting the person who is stopped." Id. (quoting United States v. Thomas, 249 F.3d 725, 729 (8th Cir. 2001)). In determining whether reasonable suspicion exists, the court considers "the totality of the circumstances in light of the officers' experience and specialized training." United States v. Davis, 457 F.3d 817, 822 (8th Cir. 2006). During a Terry stop, "officers may take any measures that are 'reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop.'" United States v. Smith, 648 F.3d 654, 659 (8th Cir. 2011).

In this case, Officers Davis and Cramblit observed Defendant walk through the T.B. Watkins housing complex and knock on two different doors without being granted access. As the officers were leaving the housing complex, they saw Defendant sitting on the stairs of an apartment building that was located a distance from the doors on which he had knocked and questioned why he would be doing so. Officer Davis approached Defendant and asked Defendant if he lived in the complex. Defendant replied that he did not, put his right hand in his pocket and walked away from Officer Davis and up the stairs to the elevated balcony. Officer Davis ordered Defendant to come down the stairs. Defendant did not comply and, instead, paced the balcony with both hands in his jacket pockets. Officer Davis ordered Defendant to take his hands out of his pockets. When Defendant only removed his left hand, Officer Davis became suspicious that Defendant may have a weapon in his right pocket. Officer Davis ordered Defendant to remove his right hand from the pocket of his jacket on three more occasions. Defendant ultimately complied by taking off his jacket and setting it down on the balcony behind him. When he did so, Officer Davis heard a "clunk" and further suspected there was a gun in Defendant's jacket. Defendant was then taken into custody for officer safety and due to his failure to comply with orders. Reasonable suspicion thus existed for the

7

investigatory stop.

Similarly, the search of Defendant's jacket was constitutionally sound. "A warrantless search of abandoned property does not implicate the Fourth Amendment, [because] any expectation of privacy in the item searched is forfeited upon its abandonment." United States v. Smith, 648 F.3d 654, 660 (8th Cir. 2011)(quoting United States v. James, 534 F.3d 868, 873 (8th Cir. 2008)). "The issue is not abandonment in the strict property right sense, but rather, whether the defendant in leaving the property has relinquished [his] reasonable expectation of privacy so that the search and seizure is valid." Id. (quoting United States v. Hoey, 983 F.2d 890, 892-93 (8th Cir. 1993)). In making this determination, the Court looks at the totality of the circumstances. United States v. Chandler, 197 F.3d 1198, 1200 (8th Cir. 1999).

Here, the totality of the circumstances demonstrate Defendant abandoned his jacket. Defendant took off his jacket and placed it on the balcony before complying with Officer Davis' orders. Defendant then laid down on his stomach approximately five feet away and did not voice any intention or desire to retrieve the jacket. By placing the jacket outside of his reach in this public place, I find that Defendant forfeited his expectation of privacy in the jacket and that a warrant was not necessary for Officer Davis to conduct the search. See United States v. Price, 16 Fed. Appx. 542, 543 (8th Cir. 2001)(holding that a defendant "abandoned his jacket when he removed it before submitting to arrest").

Even if the Court should find that Defendant maintained an expectation of privacy in his jacket, the search would still be permitted under the inevitable discovery doctrine. The exclusionary rule typically prohibits the admission of evidence that was obtained illegally. United States v. Rienholz, 245 F.3d 765, 779 (8th Cir. 2001)(citing Wong Sun v. United States, 371 U.S. 471, 484-88

8

(1963)). Under the "inevitable discovery doctrine," however, the "challenged evidence is admissible if it inevitably would have been discovered by lawful means without reference to the police misconduct." Id.; see also Nix v. Williams, 467 U.S. 431, 444 (1984); United States v. Avlarez-Gonzalez, 319 F.3d 1070, 1072 (8th Cir. 2003); United States v. Woolbright, 641 F. Supp. 1570, 1577-78 (E.D. Mo. 1986). In order for this exception to the exclusionary rule to apply, the government must prove by a preponderance of the evidence that (1) there was "a reasonable probability the evidence would have been discovered in the absence of police misconduct," and (2) "the police must have been pursing a substantial, alternative line of investigation." Avlarez-Gonzalez, 319 F.3d at 1072.

A preponderance of the evidence shows that an alternative line of investigation was being pursued in this case. As stated above, Defendant was arrested for trespassing. After an individual has been arrested for a trespassing offense, he or she is taken to jail and processed. This procedure was followed here. Because the officers would not have left Defendant's jacket laying in a public place -- especially given Officer Davis' suspicion that the jacket contained a firearm -- there is a reasonable probability that police would have discovered the firearm and ammunition once Defendant's personal property was inventoried at the jail. See United States v. Chappell, No. 09-139 (JNE/JJK), 2010 WL 1131474 at *12 (D. Minn. Jan. 12, 2010)(citing Illinois v. Lafayette, 462 U.S. 640, 646 (1983))("When a suspect is brought to the stationhouse for booking and detention, law enforcement may remove and itemize all property found on the person or otherwise in his or her possession."); United States v. Edwards, 415 U.S. 800, 803 (1974). Accordingly, the firearm and ammunition should be permitted into evidence.

9

## IV. CONCLUSION

For the above-stated reasons, it is

RECOMMENDED that the Court, after making an independent review of the record and the applicable law, enter an order denying Defendant's motion to suppress evidence.

Counsel are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has fourteen days from the date of this report and recommendation to file and serve specific objections to the same, unless an extension of time for good cause is obtained. Failure to file and serve timely specific objections may result in waiver of the right to appeal factual findings made in the report and recommendation which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

                                                                                         */s/ Robert E. Larsen*
                                                                                           ROBERT E. LARSEN
                                                                                        United States Magistrate Judge

Kansas City, Missouri
May 7, 2012